IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LINDA WHITE, et al.                                              PLAINTIFFS

V.                                      CIVIL ACTION NO. 3:21-CV-162-SA-JMV

CITY OF HERNANDO, et al.                                         DEFENDANTS

ORDER AND MEMORANDUM OPINION

Now before the Court is the Defendants' Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment [12]. The Motion [12] has been fully briefed. Having reviewed the filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Factual and Procedural Background*[1]

This civil lawsuit arises from a high-speed chase that occurred during the early morning hours of July 27, 2019, in Hernando, Mississippi. On that morning, Officer Alec Chatham of the Hernando Police Department attempted to initiate a traffic stop on a maroon Nissan Maxima, which was travelling southbound on Highway 51 in Hernando. According to the Amended Complaint [6], Officer Chatham, who believed the driver of the vehicle to be a white male driving alone, attempted to stop the vehicle due to alleged improper or incorrect tags.[2] Although the driver of the Maxima initially stopped, the driver then sped away, and a chase ensued.

During the pursuit, the Maxima reached speeds of "approximately 100 miles per hour." [6] at p. 5. While attempting to catch the Maxima, Officer Chatham maintained contact with the Hernando Police Department through dispatch. At some point, Lieutenant Jason Coleman advised

---

[1] Much of the factual recitation set forth herein is identical to the recitation set forth in this Court's previous Order [23].

[2] The Amended Complaint [6] initially states that Officer Chatham attempted to stop the Maxima "for reasons unclear" but goes on to state that the vehicle was initially pursued due to an issue with the car's tags. [6] at p. 4.

Officer Chatham to terminate the pursuit. Officer Chatham apparently complied with this directive, and the pursuit ended.

According to the Amended Complaint [6], although Officer Lynn Brown of the Hernando Police Department was not initially involved in the chase, he was aware of the pursuit and was likewise aware of Lieutenant Coleman's decision to terminate it. In fact, the Defendants admit that Officer Brown was aware of the directive to terminate the chase. The Plaintiffs allege that no member of the Hernando Police Department knew whether there were any passengers in the maroon Maxima or whether those passengers were encouraging or discouraging the unsafe driving of the Maxima.

The Plaintiffs further allege that "[d]espite being fully aware that Lieutenant Coleman had directed a termination of the pursuit of the maroon Maxima, Officer Brown engaged in further pursuit of the same car." [6] at p. 6. Officer Brown's pursuit of the vehicle "resulted in further unsafe driving by the driver of the maroon Maxima." *Id*. The Plaintiffs admit that, during the pursuit, the Maxima began driving against oncoming traffic on I-55. According to the Plaintiffs, Officer Brown performed a Tactical Vehicle Intervention maneuver on the Maxima, which caused the Maxima to flip. Two passengers of the Maxima, Jesse White and Kristopher Ford, died as a result of the crash.

On July 26, 2021, Linda White (as mother and next of kin of Jesse White) and Kathryn Bonds (as mother and next of kin of Kristopher Ford) initiated this civil action. In their Amended Complaint [6], they name as defendants the City of Hernando, Chief of Police Scott Worsham (in his official capacity), and Officer Lynn Brown (in his individual and official capacity). Against all Defendants, the Plaintiffs assert federal claims pursuant to 42 U.S.C. § 1983 for purported violations of the Fourth and Fourteenth Amendments. Specifically, the Plaintiffs allege that "White

and Ford were deprived of rights including, but not limited to (a) freedom from unlawful seizure of his person; (b) freedom from the use of unjustified and excessive force; and (c) freedom from deprivation of liberty and loss of life without due process." [6] at p. 9. The Plaintiffs assert that the City of Hernando and Chief Worsham are liable for the deprivation of White and Ford's rights due to the Hernando Police Department's policies and procedures, or lack thereof, that have allowed officers to violate the constitutional rights of the public. In addition, the Plaintiffs assert state law claims for negligence; negligent hiring, supervision and retention of Officer Brown and other officers; and negligent and/or intentional infliction of emotional distress.

On October 8, 2021, the Defendants filed the present Motion [12], contending that the Plaintiffs' Amended Complaint [6] fails to state a cognizable constitutional violation and that the federal claims should therefore be dismissed. The Defendants also raise qualified immunity as a defense to the Plaintiffs' individual capacity claim against Officer Brown, as well as other defenses to the municipal liability claims. Finally, the Defendants raise multiple arguments as to why the state law claims should be dismissed, including the statute of limitations, failure to comply with the statutory notice requirement, and Mississippi Tort Claims Act liability exemptions.

Thereafter, on October 12, 2021, the Court, consistent with Uniform Local Rule 16(b)(3)(B), entered an Order [14] staying "the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal." [14] at p. 1. The Plaintiffs filed a Motion to Lift Stay [17] and a Motion for Time to Conduct Discovery [19]. The Defendants opposed both Motions [17, 19]. On February 28, 2022, the Court entered an Order [23] denying both requests and providing the Plaintiffs fourteen (14) days to respond to the Defendants' Motion [12]. The Plaintiffs have done so, and the Motion [12] is now ripe.

3

*Judgment on the Pleadings Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Hale v. Metrex Research Corporation*, 963 F.3d 424, 427 (5th Cir. 2020) (citing *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This requires a two-step inquiry. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Doe v. Robertson*, 751 F.3d 383, 388, 390 (5th Cir. 2014)). First, the Court must identify the complaint's well-pleaded factual content. *Id*. (quoting *Robertson*, 751 F.3d at 388). In doing so, the Court must set aside "any unsupported legal conclusions," the truth of which the Court cannot assume. *Id*. Second, the Court must ask "whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold." *Id*. (quoting *Robertson*, 751 F.3d at 390).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. 1955). The Court must be able to reasonably infer from the complaint's well-pleaded facts "more than the mere possibility of misconduct." *Waller*, 922 F.3d at 599 (quoting *Iqbal*, 556 U.S. 679, 129 S. Ct. 1937). "This is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*.

4

*Analysis and Discussion*

As set forth above, the Plaintiffs have asserted federal and state law claims. The Court will address them in turn.

I. *Federal Claims*

In their Amended Complaint [6], the Plaintiffs allege that the Defendants violated the decedents' Fourth and Fourteenth Amendment rights. In particular, they aver:

> White and Ford were deprived of rights including, but not limited to (a) freedom from unlawful seizure of his [sic] person; (b) freedom from the use of unjustified and excessive force; and (c) freedom from deprivation of liberty and loss of life without due process of law.

[6] at p. 9. While the Plaintiffs invoke both the Fourth and Fourteenth Amendment, the Fourteenth Amendment claims are improper and are therefore dismissed at the outset.[3]

These claims are asserted pursuant to 42 U.S.C. § 1983 against all Defendants, which (again) includes the City of Hernando, Chief of Police Scott Worsham (in his official capacity), and Officer Lynn Brown (in his official and individual capacity).

"[T]he United States Supreme Court has held that [Section 1983's] 'very purpose . . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law.'" *Alexander v. McAdams*, 2017 WL 5642328, *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S. Ct. 2151, L. Ed. 2d 705 (1972)) (emphasis omitted). In order to state a claim under Section 1983, a plaintiff must "(1) allege he has been deprived of a right secured

---

[3] "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). Here, both parties agree that a seizure occurred. Therefore, the Fourth Amendment rubric applies to the Plaintiffs' claims.

by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)).

Undoubtedly, different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against a law enforcement officer. *See Weeks*, 2007 WL 316261, at *2 ("Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the officer] violated a clearly established constitutional right."). Nevertheless, whether seeking to impose liability against a municipality or an individual officer, a Section 1983 plaintiff must first allege that she has been deprived of a right secured by the United States Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (holding that in order to establish a Section 1983 claim, there must be "a deprivation of a right secured by federal law[.]"). If the plaintiff has not been deprived of a federal constitutional or statutory right, there can be no viable Section 1983 claim. *Id.*

Aware of these authorities, the Court will first consider whether the Plaintiffs have properly alleged the deprivation of a constitutional right.

A.      *Fourth Amendment Claims*

The Plaintiffs assert claims for unlawful seizure and excessive force, both of which are governed by the Fourth Amendment. *See, e.g.*, *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016) (noting duty to analyze "[a]ll claims that law enforcement officers have used excessive force—

6

deadly or not—in the court of an arrest, investigatory stop, or other 'seizure' of a free citizen . . . under the Fourth Amendment and its 'reasonableness' standard[.]") (citation and quotation marks omitted); *Ristow v. Hansen*, 719 F. App'x 359, 363 (5th Cir. 2018) (analyzing unlawful seizure claim under Fourth Amendment).

i.      *Unlawful Seizure Claim*

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, in some way restrained the liberty of a citizen.'" *Ristow*, 719 F. App'x at 363 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)) (additional citation omitted). "When considering whether a seizure occurred, we ask 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988)) (additional citation omitted). To prevail on an unlawful seizure claim, a plaintiff must prove (1) that a seizure occurred, and (2) that the seizure was unreasonable. *See Torres v. Madrid*, --- U.S. ---,141 S. Ct. 989, 1003, 209 L. Ed. 2d 190 (2021); *see also District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 586-87, 199 L. Ed. 2d 453 (2018).

In the context of a high-speed chase, "[a] Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989)) (alterations omitted) (emphasis added). Where an officer attempts to stop a vehicle with flashing lights and continued pursuit, no Fourth Amendment seizure takes place. *See Brower*, 489 U.S. at 595-96, 599, 109 S. Ct. 1378. Instead, the occupants of the vehicle are seized at the point where the fleeing car stops

due to means intentionally applied by police. *Id*. Here, the Defendants concede that a seizure occurred upon Officer Brown performing the Tactical Vehicle Intervention. The Court agrees.

But the inquiry does not end there. Next, the Fourth Amendment requires a seizure to be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed.2d 89 (1996). Stated conversely, the Plaintiffs bear the burden to show that the seizure was not reasonable under the circumstances. *See Torres*,141 S. Ct. at 1003. "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Spears*, 636 F. App'x 893, 898 (5th Cir. 2019) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).

The Amended Complaint [6] clearly states that Officer Brown knew the driver of the Maxima "potentially had incorrect or improper tags" and had just led Officer Chatham on a high-speed chase. [6] at p. 5-6. The Plaintiffs' Response [24] echoes these allegations. Therefore, the Plaintiffs do not seem to contest that Officer Brown had a lawful reason to stop the Maxima, though the Amended Complaint [6] does, in conclusory fashion, refer to the purported reason for the initial stop (initiated by Officer Chatham) as "benign or pretextual." [6] at p. 6.

In other words, although the Amended Complaint [6] references an unlawful seizure claim, the Plaintiffs do not sufficiently allege such a claim because they admit that Officer Brown had a lawful reason to stop the Maxima.[4]

---

[4] To be clear, the Court is unsure that the Plaintiffs in fact intended to bring an unlawful seizure claim. The Amended Complaint [6] refers to an unlawful seizure claim, and the Plaintiffs' Response [24] concludes that an unreasonable seizure occurred. However, the Plaintiffs' primary argument is that excessive force was used to perfect the seizure, which is "separate and distinct" from an unlawful seizure claim. *Brown v. Lynch*, 524 F. App'x 69, 79 n. 3 (5th Cir. 2013). As the Plaintiffs have not actually contested the reasons Officers Chatham or Brown attempted to initiate traffic stops, the Plaintiffs' intent is unclear. Nonetheless, the facts provided do not plausibly state a claim for unlawful seizure. Therefore, to the extent any such claim is asserted, it is dismissed.

That claim therefore must fail, and it is hereby dismissed as to all Defendants.[5]

ii.     *Excessive Force Claim*

Having dismissed the unlawful seizure claim, the Court turns to the Plaintiffs' other Fourth Amendment claim, which is based upon excessive force. The Fourth Amendment guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment's reasonableness standard governs a claim that law-enforcement officers used excessive force to effectuate a seizure. *Plumhoff v. Rickard*, 572 U.S. 765, 774, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)) (additional citation omitted). To prevail on an excessive force claim, the plaintiff must show that the use of force was excessive, and "that the excessiveness of the force was unreasonable." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

In *Scott v. Harris*, the Supreme Court established a framework to evaluate the reasonableness of the force used in the context of high-speed chases. 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007).[6] In *Scott*, a deputy clocked the plaintiff's vehicle traveling almost 20 miles per hour above the speed limit and attempted to initiate a traffic stop. *Id*. at 374. The plaintiff refused to stop, and a high-speed chase ensued. *Id*. The defendant (another deputy) took over the lead in the chase and, after traveling at speeds in excess of 85 miles per hour in a chase that had lasted over six minutes, attempted to end the chase by employing a "Precision Intervention

---

[5] To the extent Plaintiffs assert that the seizure was unlawful because "White and Ford were not suspected of committing any crimes at the time of the pursuit or the fatal crash", the Court's analysis remains the same. [6] at p. 7. Where an officer has lawfully detained a vehicle and its occupants, the stop is a lawful detention of passengers as well. *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).
[6] The Court has recently explained and applied *Scott* in detail in the context of a high-speed chase. *See Waddell v. Tishomingo Cnty, Miss., et al.*, 2022 WL 683094 (N.D. Miss. Mar. 3, 2022).

Technique." *Id*. at 375. That technique involves bumping the fleeing vehicle with a push bumper that causes the vehicle to spin to a stop. *Id*. As a result of the defendant's application of this technique, the plaintiff "lost control of his vehicle, which left the roadway, ran down an embankment, overturned, and crashed. [The plaintiff] was badly injured and was rendered quadriplegic." *Id*.

To determine whether the officer's actions were reasonable, the Supreme Court "balance[d] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. at 383. In doing so, the Court "consider[ed] the risk of bodily harm that [the officer]'s actions posed to [the driver] in light of the threat to the public that [the officer] was trying to eliminate." *Id*.  While the officer's actions posed a serious risk of injury or death to the driver, the driver's actions posed an actual and imminent threat to pedestrians, other motorists, and the officers involved in the chase. *Id*. at 384. Additionally, the Court "[took] into account not only the number of lives at risk, but also their relative culpability." *Id*. The Court emphasized that it was the driver "who intentionally placed himself and the public in danger," whereas those who might have been harmed had the officer not acted "were entirely innocent." *Id*. Ultimately, the *Scott* Court found that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id*. at 386.

The Fifth Circuit applied *Scott* when faced with similar factual circumstances in *Pasco ex rel Pasco v. Knoblauch*. 566 F.3d 572 (5th Cir. 2009). In *Pasco*, the Fifth Circuit found no Fourth Amendment violation where the officer fatally bumped the fleeing suspect off the road during a high-speed car chase. 566 F.3d at 581. There, "[t]he chase occurred on a curvy two-lane road in a

residential area at approximately 3:00 in the morning." *Id*. at 579. The decedent was suspected of drinking while driving and he was having trouble navigating the curves at the high rate of speed. *Id*. While the decedent was driving dangerously, "no other vehicles, pedestrians, or other bystanders were encountered during the pursuit," and the officer's supervisor ordered him to terminate the chase. *Id*. at 574, 579. Despite the lack of other persons on the roadway (suggesting the decedent driver posed a less significant threat), the Fifth Circuit found it was reasonable for the officer to believe the driver would continue to pose a danger to innocent individuals he *might* encounter if he continued unabated. *Id*. at 581. (emphasis added). Like in *Scott*, the Fifth Circuit also gave weight to the fleeing driver's culpability and the innocence of others he could have encountered if the chase continued. *Id*. Therefore, the Fifth Circuit reasoned, the officer's choice to end the chase was reasonable. *Id*.

Against this backdrop, the Court, consistent with the guidance provided by the Supreme Court in *Scott*, will balance the nature and quality of the intrusion on the decedents' Fourth Amendment rights against the governmental interests at stake. The Amended Complaint [6] provides only two facts regarding the Maxima's course of action during Officer Brown's pursuit: (1) that the Maxima entered the wrong lanes of traffic on I-55, and (2) that the driver engaged in unsafe driving. The Amended Complaint [6] does provide that the Maxima reached speeds of over 100 miles per hour while being pursued by Officer Chatham during the initial chase, but it is not clear how fast the vehicle was traveling while being pursued by Officer Brown. The Amended Complaint [6] provides no information on the distance traveled during the pursuit, the length of time the pursuit lasted, whether there were other vehicles on the interstate, or other specific dangerous acts of the driver (i.e. running red lights or stop signs). However, the Court emphasizes that the Plaintiffs admit that the driver engaged in unsafe driving.

It cannot be seriously disputed that the Maxima's path against traffic on I-55 (which, again, has been admitted by the Plaintiffs) posed an actual and imminent threat to occupants of other vehicles, bystanders, and officers in pursuit. The vehicular collisions the Maxima could have caused are obvious. The Maxima could have run into other vehicles head-on, and other vehicles could have collided while trying to evade the Maxima or the wrecks it caused. These collisions would be especially devastating at interstate speeds. The fact that one Maxima could cause serious injury or death to occupants of several oncoming vehicles makes significant the governmental interest in neutralizing the threat. Viewing this situation from Officer Brown's perspective, he was faced with the option to force the Maxima off the interstate or allow the vehicle to continue to travel against traffic, thereby placing other people in danger.

Importantly, the Court's assessment remains the same despite the lack of alleged facts regarding whether other vehicles or bystanders were on I-55. In *Pasco*, the Fifth Circuit explained that in *Scott* there were no other vehicles or bystanders at risk at the moment the officer rammed the plaintiff's vehicle. 566 F.3d at 581. The Fifth Circuit opined that "[t]his indicates that the holding of *Scott* was not dependent on the actual existence of bystanders—rather, the Court was also concerned about the safety of those who could have been harmed if the chase continued." *Id*. (citing *Scott*, 550 U.S. at 374 n. 7, 127 S. Ct. 1769). Therefore, that the driver in *Pasco* did not actually encounter anyone during the high-speed chase did not change the Fifth Circuit's holding that the officer's use of force was reasonable. The same reasoning applies here. Even though the Court has no additional facts about the length of the chase or the number of vehicles on I-55 at the moment Officer Brown used the Tactical Vehicle Intervention, it cannot be legitimately disputed that the Maxima's path against traffic could have resulted in serious accidents had it continued driving in the wrong direction. The danger was clear and obvious.

Like the *Scott* and *Pasco* courts, this Court also gives weight to the culpability of those threatened. The driver of the Maxima chose to drive into oncoming traffic on I-55 and place the occupants of other vehicles in grave danger, whereas the occupants of the other vehicles on I-55 were entirely innocent. Officer Brown was therefore faced with the choice to allow the driver to continue driving unabated or bump him off the road to "potentially save the lives of individuals who had no part in creating the danger." *Id*. at 581. The balancing test shows that Officer Brown's actions were reasonable. Therefore, there is no Fourth Amendment violation. *See*, *e.g.*, *Thompson*, 762 F.3d at 437.

There are two important factual distinctions between the above-referenced cases and the case at bar. While they do not alter the outcome in this case, they are significant to the Plaintiffs' arguments so the Court will address them in turn. First, the decedents in this case were *passengers* of the Maxima, not the driver as in *Scott* and *Pasco*. The Plaintiffs' Response [24] places great weight on this fact, stating that "[Officer Brown] chose to use deadly force despite **no** knowledge of how many occupants were in the vehicle." [24] at p. 14 (emphasis in original). In *Scott* and *Pasco*, the courts gave great weight to the culpability of the driver and the fact that the driver himself chose to engage in a high-speed chase, whereas the actions of the decedent passengers in this case are unknown. However, the straightforward question presented is whether the officer's actions were reasonable under the circumstances. Officer Brown was confronted with the same choice between "two evils" as the officers in *Scott* and *Pasco*. *See Scott*, 550 U.S. at 384, 127 S. Ct. 1769; *see also Pasco*, 566 F.3d at 581 ("the officer was stuck between 'two evils' in either possibly harming the fleeing suspect or possibly allowing innocent parties to be injured"). The Plaintiffs do not allege that Officer Brown was aware of any passengers being in the Maxima.

13

Officer Brown chose to neutralize the threat of the single vehicle.[7] He could not have possibly stopped to measure the number of occupants in the Maxima versus the number of occupants in the vehicles in harm's way. As the Court concludes above, Officer Brown's actions were reasonable.

The second distinction between this case and *Scott* is that Officer Brown pursued the Maxima *after* a supervising officer instructed Officer Chatham to end the pursuit. The Plaintiffs assert that Officer Brown "decided to reengage the pursuit" *contrary to Lieutenant Coleman's instruction* and that "resulted in further unsafe driving." [6] at p. 6 (emphasis added). Although that fact may appear on its face to render Officer Brown's conduct more culpable, as discussed in *Pasco* where the officer similarly disobeyed a supervisor, it is well-established that the fact that Officer Brown acted contrary to Lieutenant Coleman's order to Officer Chatham is "constitutionally irrelevant." *Pasco*, 566 F.3d at 579 (citing *Scott*, 550 U.S. at 375 n.1, 127 S. Ct. 1769) (additional citations omitted). "Violations of non-federal laws cannot form a basis for liability under § 1983, and qualified immunity is not lost because an officer violates a department protocol." *Id.*

Relatedly, the Plaintiffs' central argument seems to be that a constitutional violation occurred because Officer Brown chose to pursue a vehicle he knew would dangerously flee. The Plaintiffs assert that Officer Brown's decision to attempt to stop the Maxima again, despite Lieutenant Coleman ending Officer Chatham's pursuit, *created* a danger that was "Officer Brown's own making." [24] at p. 13 (emphasis added). Their Response [24] states, "Officer Brown's conduct is such that it is obvious that his conduct violated the decedents' constitutional

---

[7] Additionally, this Court recently found that a police officer acted reasonably when he shot into a vehicle and struck a passenger in an attempt to end a high-speed chase. *Waddell*, 2022 WL 683094, at *6; *see also Littlejohn v. New Orleans City*, 493 F.Supp.3d 509, 519 (E.D. La. Oct. 8, 2020) ("That C.K.'s 'flight' was not his choice but B.W.'s is tragic, but it does not change the legal analysis. The pursuing officers violated neither occupants' Fourth Amendment right to freedom from unreasonable seizure.")

rights. He chose to engage in a new pursuit, despite knowledge of the potential dangers." [24] at
p. 14.

To this argument, the Court emphasizes, just as the courts emphasized in *Scott* and *Pasco*,
the driver chose to flee and initiate a chase. *Scott*, 550 U.S. at 384 ("It was respondent, after all,
who intentionally placed himself and the public in danger by unlawfully engaging in the reckless,
high-speed flight."); *Pasco*, 566 F.3d at 581 ("Like in *Scott*, it was Pasco himself who created this
dangerous situation."). The Court also emphasizes that the Plaintiffs repeatedly admit that Officer
Brown had lawful reasons to stop the Maxima—improper tags and previous flight from an officer.
When Officer Brown attempted to lawfully stop the Maxima, the driver could have pulled over
and cooperated with the traffic stop. He, of course, did not.

This Court appreciates the Plaintiffs' position that Officer Brown would have been nearly
certain that the driver would dangerously flee instead of pulling over and that an officer should be
held accountable when he pursues a vehicle he knows will flee, particularly when his supervisor
has deemed the vehicle unworthy of the risk of pursuit. However, "[t]he excessive force inquiry is
confined to whether [the officer or another person] was in danger *at the moment of the threat* that
resulted in [the officer's use of deadly force]." *Harris v. Serpas*, 745 F.3d 767, 773 (5th Cir. 2014)
(quoting *Rockwell v. Brown*, 664 F.3d 985, 992-93 (5th Cir. 2011)) (emphasis in original).
Therefore, the Court cannot consider Officer Brown's perhaps poor choice to attempt to stop the
Maxima again. The Court can only consider whether the Maxima threatened the lives of others *at
the moment* Officer Brown used force to stop it. Again, *Scott* and *Pasco* make clear that the actual
existence of bystanders is not necessary in deciding whether the officer's actions were reasonable.
*Pasco*, 566 F.3d at 581. The Court's concern is with the safety of those the driver might encounter.
*Id*. ("the undisputed facts indicate that [the driver] *would have* harmed someone if [the officer] had

not ended the chase . . . [The officer] had no way of knowing if another vehicle would enter [the driver]'s path[.]") (emphasis added). At the moment Officer Brown used force to stop the Maxima, its path against traffic threatened any vehicle that it might have encountered.[8]

Moreover, to the extent that the referenced statement in Plaintiffs' Response [24] ("it is obvious that his conduct violated the decedents' constitutional rights") is an attempt to assert the obviousness exception announced in *Hope v. Pelzer*, the assertion fails. 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). In *Hope*, the Supreme Court found that a plaintiff can defeat a qualified immunity defense, without showing that a constitutional violation was clearly established by jurisprudence, by instead "showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1232 (11th Cir 2020) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). The Plaintiffs have failed to allege facts showing that a constitutional violation occurred. Therefore, the Plaintiffs certainly cannot show that a violation was obvious despite a lack of jurisprudence recognizing it as such.

Finally, the Court finds this argument to suggest the implementation of a broad rule that police officers act unreasonably when they attempt to stop individuals whom they suspect may dangerously flee. The Plaintiffs cite no authority on point for the application of a bright-line rule of that nature, and the Court will not impose such a rule. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 414 (5th Cir. 2009) ("There are few, if any, bright lines for judging a police officer's use of

---

[8] This is consistent with the Court's recent reasoning in *Waddell*. There, the plaintiff argued that the officer's use of force (shooting towards a vehicle) was not reasonable because no civilian motorists or pedestrians were present. *Waddell*, 2022 WL 683094, at *5-6. The Court rejected this argument, responding that "[i]t would be illogical . . . to find that [the driver] did not pose a risk to the general public simply because he did not happen to pass any other vehicles or pedestrians during the video." *Id.* at *6.

force.").  Instead, the Court utilizes the fact-bound balancing test of *Scott* to determine whether the officer's actions were reasonable under the circumstances. They were.

In conclusion, the Plaintiffs have failed to establish a constitutional violation under the Fourth Amendment. Therefore, the Plaintiffs' Fourth Amendment claims, must be, and hereby are, dismissed as to all Defendants.

II.     *State Law Claims*

The Plaintiffs have asserted a variety of state law claims. As to all Defendants, they assert claims for negligence and negligent and/or intentional infliction of emotional distress. They also allege that the City of Hernando is liable for negligent hiring, supervision, and retention of Officer Brown and other officers.

The Defendants move for dismissal of these claims on multiple grounds. First, they contend that the Mississippi Tort Claims Act ("MTCA") provides the exclusive civil remedy for claims of this nature and that the Plaintiffs failed to comply with the MTCA's one year statute of limitations. Next, they argue that the Plaintiffs failed to comply with the MTCA's notice requirement set forth in Mississippi Code Section 11-46-11(1). The Defendants also raise two substantive defenses to the state law claims: (1) the police-protection exemption pursuant to Mississippi Code Section 11-46-9(1)(c); and (2) discretionary function immunity pursuant to Mississippi Code Section 11-46-9(1)(d).

Despite the Defendants' numerous arguments, the Plaintiffs failed to address them in any fashion whatsoever in their Response Memorandum [24]. While the Court believes that some of Defendants' arguments may be successful grounds for dismissal, the Court does not need to reach the merits of those arguments because Plaintiffs' Response [24] fails to address them. This Court has time and again held that a plaintiff's "failure to respond amounts to an abandonment of the

claims." *Johnson v. Univ. of Miss.*, 2022 WL 164545, at *5 (N.D. Miss. Jan. 18, 2022) (citing *City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012)); *see also Scott v. Spencer Gifts, LLC*, 2015 WL 4205242, at *1 (N.D. Miss. July 10, 2015) ("In their response, Plaintiffs have made no argument and offered no proof in support of their claims of intentional infliction of emotional distress and failure to train or supervise, and thus the Court finds these theories to be abandoned."); *Sanders v. Sailormen, Inc.*, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012) (collecting cases). Consistent with these authorities, the Court finds the Plaintiffs' state law claims should be, and hereby are, dismissed as abandoned.

*Conclusion*

For the reasons set forth above, the Defendants' Motion for Judgment on the Pleadings [12] is GRANTED. The Plaintiffs' claims against the City of Hernando, Chief Worsham, and Officer Brown are dismissed *with prejudice*. A Final Judgment consistent with this Order and Memorandum Opinion will issue this day.  This CASE is CLOSED.

SO ORDERED, this the 28th day of September, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE